CUNNINGHAM, MACHANIC, CETLIN, JOHNSON & HARNEY, LLP

**Maryann Brunton, Investigator**
**Campbell v Isolation Technologies**
**MCAD Docket No. 02SEM02493**
**Position Statement**
**October 1, 2002**
**Page 3 of 7**

He then stated that because he (Mr. D'amato) was Italian, he was the one with the power."

**Response:** Mr. D'Amato denies having made these statements, or any statements of this nature. Moreover, he denies that any conversation as to why Mr. Campbell was not being hired even took place, in light of the fact that he offered Mr. Campbell a job on more than one occasion.

**Allegation:** "5. After our conversation, I spoke with Steve (LNU) in Quality Control. Steve informed me that Michael Rigoli would be out of the office for the next three days."

**Response:** For purposes of this Response, we must assume that Mr. Campbell is describing Steve Goddard, of Isolation's Quality Control department. The Respondents cannot admit or deny what was said between Mr. Campbell and Mr. Goddard. To the extent that Mr. Campbell is suggesting that he complained to Mr. Goddard about discriminatory treatment, however, the Respondents deny any such allegation.

**Allegation:** "6. On April 2, 2002, I received a call from Paul, an employee at Excell Staffing, who informed me that I was no longer needed at Isolations Technologies according to Larry D'amato."

**Response:** The Respondents cannot admit or deny what was said between Mr. Campbell and the Excel employee, however, they admit that Excel was instructed to inform Mr. Campbell that his services as a temporary employee were no longer needed. This was certainly no secret, however, and Mr. D'amato also gave Mr. Campbell the same information prior to his hearing it from Excel.

**Allegation:** "7. While I had been working at Isolations, I say many white individuals with little or no experience get hired."

**Response:** Between Christmas, 2001, and the present, Isolation has hired 16 people into manufacturing positions (operators, machinists, assemblers), including 12 Caucasians and 4 Asians. Each was qualified to perform the tasks for which they were hired.

**Allegation:** "I believe I was more qualified for many positions into which the e white individuals were hired."

**Response:** Denied. Moreover, Mr. Campbell was offered employment as a machine operator, the role he was filling while an Excel employee.

**Allegation:** "I believe Isolations Technologies' failure to consider me for hire constitutes

Maryann Brunton, Investigator
Campbell v Isolation Technologies
MCAD Docket No. 02SEM02493
Position Statement
October 1, 2002
Page 4 of 7

unlawful discrimination because of my race/color."

  **Response:** Denied.

### III. Isolation made every effort to employ Mr. Campbell, however, he declined after seeking higher compensation.

  **a.   Background.**   Isolation often hires production employees through temporary agencies. As is typical of the temporary placement industry, the operators are employed by the agency and are placed on temporary assignment at Isolation.  Due to the high cost of temporary help, Isolation typically keeps agency employees between 500 and 600 hours (approximately 3 to 4 months), after which time they may be offered employment with Isolation.

  Mr. Campbell was sent to Isolation by Excel to interview for one such temporary position as a machine operator.  Mr. D'Amato, Isolation's Operations Manager, accepted him without hesitation and was quite pleased with his work.  Throughout his stay as an Excel employee, Mr. Campbell made it known that he was in need of additional money and Mr. D'Amato went so far as to contact Excel and ask them to increase his hourly rate (which resulted in a higher billing rate to Isolation).  In addition, when Mr. Campbell requested additional hours, whether overtime or during holidays, Mr. D'Amato freely gave them.

  As Mr. Campbell approached the 3 to 4 month mark, Mr. D'Amato asked if he would be interested in joining as an Isolation employee, offering him $17.50 per hour.  Although Mr. Campbell expressed interest in regular employment, he made it clear that he would not be able to accept the pay cut associated with leaving the temporary employment agency, and suggested that he would need closer to $25.00 per hour. (Bearing in mind, however, that the increased hourly rate typically paid by a temporary agency was without benefits, while employment with Isolation would have included a full employee benefit package.)  Hoping to change Mr. Campbell's mind, Mr. D'Amato kept him on board for almost 800 hours, significantly longer than the norm.

  During approximately this same timeframe, Mr. D'Amato offered machine operator positions to two temporary employees, with hourly rates of $17.50 and $18.00. Interestingly, although one declined because of the rate was far less than the under 20.00 range (without benefits) he was receiving as a temporary employee, he later returned and accepted the position.  In addition, since the beginning of 2002, Isolation has hired three additional machine operators, paying hourly rates of $15.60, 15.60 and $14.70.

CUNNINGHAM, MACHANIC, CETLIN, JOHNSON & HARNEY, LLP

Maryann Brunton, Investigator
Campbell v Isolation Technologies
MCAD Docket No. 02SEM02493
Position Statement
October 1, 2002
Page 5 of 7

Throughout Mr. D'Amato's efforts to hire Mr. Campbell, he kept Excel fully informed. They were fully aware that a job offer was being made and that Mr. Campbell simply needed more money that Isolation was offering.

**b. Isolation did not "fail to consider [Mr. Campbell] for hire", but made every effort to hire him.** As explained above, the Respondents not only offered Mr. Campbell a position with Isolation, but did so on multiple occasions. Moreover, since Mr. D'Amato liked his work and was hoping to change Mr. Campbell's mind about rejecting the position, he kept him working as an Excel employee for additional time, at a cost which was well about that which he would normally pay to a "direct" Isolation employee. In the end, however, Mr. Campbell chose not to accept the compensation offered.

**c. At no time did Mr. D'Amato make any discriminatory remarks, as alleged by Mr. Campbell.** Moreover, at no time prior to filing his Charge of Discrimination, did Mr. Campbell complain about, or even suggest that such remarks were made. Although he had every opportunity to complain about these alleged statements, he did not do so to either Mr. D'Amato, co-workers or the Excel manager.

**d. There is nothing in Mr. D'Amato's behavior toward Mr. Campbell to suggest that there is any credibility to his allegations.** To the contrary, when Mr. Campbell made it known that he needed to make more money while an Excel employee, Mr. D'Amato went to bat for him and had Excel increase his hourly rate by one dollar. In doing so, he increased Isolation's cost. Later, when Mr. Campbell rejected the $17.50 job offer, Mr. D'Amato held him over as a temporary employee for a period well beyond the norm, hoping that he would change his mind. Again, this was done at additional cost to his budget.

**IV. Isolation offered employment to Mr. Campbell on the same or similar term as were offered to similarly situated employees who were not of his race/color.**

As stated above, Isolation hired five (5) machine operators since December 26, 2001. Their hourly rates ranged from $14.70 to $18.00. Mr. Campbell was offered $17.50, however he told Mr. D'Amato that he needed to be as close as possible to $25.00 per hour. He simply rejected the job offer and Isolation heard nothing further until receiving notice of his Charge in early August, 2002.

**V. Conclusion. Isolation did not violate MGL Chapter 151B, or discriminate against Mr. Campbell in any manner.**

**CUNNINGHAM, MACHANIC, CETLIN, JOHNSON & HARNEY, LLP**

Maryann Brunton, Investigator
Campbell v Isolation Technologies
MCAD Docket No. 02SEM02493
Position Statement
October 1, 2002
Page 6 of 7

Mr. Campbell's allegations are wholly unsubstantiated and are simply not credible in light of the way he was treated by Mr. D'Amato. In light of his expressed need for additional money throughout his period of temporary employment, Mr. Campbell's motivation is entirely suspect. Accordingly, we submit that Isolation did not discriminate against Mr. Campbell, whether in violation of Chapter 151B or otherwise, and that the facts support a finding of LOPC and dismissal of this Charge of Discrimination.

Please contact the undersigned if you require additional information in support of this position statement. Thank you.

Very truly yours,
CUNNINGHAM, MACHANIC,
CETLIN, JOHNSON & HARNEY, LLP

William M. Zall

WMZ/200877

CERTIFICATE OF SERVICE

I hereby certify that a copy of Respondents' position statement in the matter of Campbell v Isolation Technologies Inc. (MCAD Docket No. 02SEM02493), was served upon the Complainant by mail addressed to Anthony Campbell, P.O. Box 3469, Worcester, MA 01613, on October ___1st___, 2002.

William M. Zall

10/01/02  15:00 FAX 5084781770                    ISOLATION TECH                    @003

OCT-01-2002  14:18      CUNNINGHAM, MACHANIC                508 653 0119    P.12/12

**CUNNINGHAM, MACHANIC, CETLIN, JOHNSON & HARNEY, LLP**

**Maryann Brunton, Investigator**
**Campbell v Isolation Technologies**
**MCAD Docket No. 02SEM02493**
**Position Statement**
**October 1, 2002**
**Page 7 of 7**

I, Richard Hersom, hereby affirm that I am employed as the president of Isolation Technologies, Inc., that I am authorized to make this statement on behalf of Isolation, that I have read the Respondent's Position Statement in the matter of Campbell v Isolation Technologies Inc. (MCAD Docket No. 02SEM02493), and that I declare under pains and penalty of perjury that it is true and correct to the best of my knowledge and information.

Richard Hersom, President
Isolation Technologies, Inc.

I, Larry D'Amato, hereby affirm that I have read the Respondent's Position Statement in the matter of Campbell v Isolation Technologies Inc. (MCAD Docket No. 02SEM02493), and that I declare under pains and penalty of perjury that it is true and correct to the best of my knowledge and information.

Larry D'Amato

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
436 Dwight Street, Rm. 220 , Springfield, MA 01103
Phone:  (413) 739-2145 Fax:

8/7/2002

Anthony  Campbell
P.O. Box 3469
Worcester, MA 01613

RE: Anthony  Campbell  vs. Isolations Technologies
MCAD Docket Number: 02SEM02493
EEOC/HUD Number: 16CA202743

Dear Complainant Party:

Please be advised that the Massachusetts Commission Against Discrimination (MCAD) has assigned
Maryann Brunton to investigate the above referenced complaint of discrimination.  The Commission's
investigator will review the allegations in the complaint and will keep the parties informed of developments
arising from that investigation.

In order to  reduce the  time necessary  to investigate  and resolve complaints of  discrimination, the
MCAD schedules  an Investigative Conference with the parties  shortly after  the complaint  is filed.
Information about the Conference is included with this notice.

An Investigative Conference regarding the above complaint will be held at the Commission's  Office, 436
Dwight Street, Rm. 220 , Springfield, MA at 09:00 AM on 12/17/02.  You are required to attend this
conference and your failure to do so will be taken as representing a lack of interest on your part in pursuing
this claim.

One important purpose of this conference will be to determine whether the parties are willing to consider a
rapid, informal and voluntary resolution of this dispute. The Commission encourages such resolution as an
alternative to the often lengthy and expensive litigation process.

If you have any questions pertaining to the Investigation, please contact Maryann Brunton at (413) 739-
2145 x 113.

Very truly yours,

Maryann Brunton
Investigator

Cc:

## U.S. Equal Employment Opportunity Commission

Boston Area Office
JFK Federal Building, Room 475
Boston, MA 02203
Phone: (617) 565-3200
TDD: (617) 565-3204
Fax: (617) 565-3196

EEOC Charge No: 16CA202743

NOTICE
This office has been sent a copy of the Complaint of employment discrimination you filed with the
Massachusetts Commission Against Discrimination (MCAD), and in order to preserve your federal rights
the above referenced charge number has been assigned.

YOUR FEDERAL RIGHTS AND EEOC PROCEDURAL REGULATIONS
(x) Title VII of the Civil Rights Act of 1964, as amended (Title VII)-
If you wish to file a private lawsuit in Federal District Court with your own private attorney, prior
to the MCAD's completion of its investigation, you may do so by requesting a NOTICE OF
RIGHT TO SUE from the EEOC. Once this request for you to file a private lawsuit is granted,
your EEOC charge and possibly the MCAD complaint will be closed. When you receive the
NOTICE OF RIGHT TO SUE, it is only valid for ninety (90) days.

( ) The age discrimination in employment act of 1967, as amended (ADEA)-
If you filed your complaint within 300 days of the alleged act of discrimination you can file a
private lawsuit under the ADEA any time 60 days after the date you filed your complaint, or
within 90 days of your receipt of notice that the EEOC has completed action on your complaint.

( ) The Americans with Disabilities Act of 1990 - Same as Title VII.

The Massachusetts Commission Against Discrimination will investigate and resolve your complaint. If you
have any questions regarding the status of your complaint, contact the MCAD location where you filed the
complaint. If you want EEOC to conduct a review of the MCAD's Final Determination and Order, you
must make this request in writing to the above address within 15 days of the MCAD's final determination,
otherwise, we will accept the MCAD's final action as our own. EEOC's regulations require that you inform
us and the state agency, in writing, of any change in or prolonged absence from your current address.

If you do not wish to file a private lawsuit on your own, and wish the Massachusetts Commission Against
Discrimination to continue with its investigation of your complaint, there is no need for you to take any
action now. The MCAD will in the near future inform you of their findings.

EEOC Charge Number 16CA202743, EEOC Transmittal Letter to Complainant

JUL 2 3 2002

DISCRIMINATION COMPLAINT
MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION AND EEOC.

FEPA NO.: 02280493
EEOC NO.: 16CA202743

FILING DATE: 7/23/02
VIOLATION DATE: 4/2/02

NAME OF AGGRIEVED PERSON OR ORGANIZATION:
Anthony Campbell
P.O. Box 3469
Worcester, MA 01613

TELEPHONE NUMBER (508) 757-5123

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT
AGENCY OR STATE/LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED
AGAINST ME:
Isolations Technologies
4 Business Way
Hopedale, MA 01747

TELEPHONE NUMBER (508)-478-0111
NO. OF EMPLOYEES: 25+

Larry D'amato, Operations Manager

CAUSE OF DISCRIMINATION BASED ON:  Race/Color (Black)

THE PARTICULARS ARE:

On April 2, 2002, Isolations Technologies discriminated against me by failing to consider me for hire based on my race/color (Black), in violation of M.G.L. c.151B s4(1) and Title VII of the 1964 Civil Rights Act.

Larry D'amato, Operations Manager, also interfered with the exercise and enjoyment of my civil rights granted and protected by failing to consider me for hire based on my race/color (Black), in violation of M.G.L. c. 151B s4 (4A).

1. In September of 2001, I gained part-time employment as a machine programmer with Isolations Technologies through Excel Staffing, a temp agency.
2. On March 29, 2002, Larry D'amato, approached me while I was working and asked if it was true that I was interested in working full-time and/or being hired directly through Isolations Technologies. I replied that I was definitely interested.
3. Mr. D'amato responded, "That will not happen. A black person will never work full-time for Isolations Technologies. You were brought here just as a cover but will never be hired by Isolations Technologies. Stay with Excel."
4. A few moments later, Mr. D'amato approached me again and said, "I am the power who hires and fires, there will be no blacks ever to be hired by Isolations Technologies in the past, present, or future". I asked him if that's why there was not a single black employee at Isolations, and he said yes. I asked him if the owner, Michael Rigolli, supported his view. Mr D'amato stated that Michael

didn't have the power to hire and fire.  He then stated that because he (Mr. D'amato) was Italian, he was the one with the power.

5.  After our conversation, I spoke with Steve (LNU) in Quality Control.  Steve informed me that Michael Rigolli would be out of the office for the next three days.

6.  On April 2, 2002, I received a call from Paul, an employee at Excell Staffing, who informed me that I was no longer needed at Isolations Technologies according to Larry D'amato.

7.  While I had been working at Isolations, I saw many white individuals with little or no experience get hired.  I believe I was more qualified for many positions into which these white individuals were hired.

I believe Isolations Technologies' failure to consider me for hire constitutes unlawful discrimination because of my race/color.


       I ALSO WANT THIS CHARGE FILED WITH EEOC: _____
I WILL ADVISE THE AGENCIES IF I CHANGE MY ADDRESS OR TELEPHONE NUMBER AND I WILL COOPERATE FULLY WITH THEM IN THE PROCESSING OF MY CHARGE IN ACCORDANCE WITH THEIR PROCEDURES.
I SWEAR OR AFFIRM THAT I HAVE READ THIS COMPLAINT AND THAT IT IS TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.


_____
Anthony Campbell


       SWORN TO AND SUBSCRIBED BEFORE ME THIS 19th DAY OF
July , 2002


NOTARY PUBLIC


My Commission Expires:    /    /

**MARY ANSARA**
**Notary Public**
My Commission Expires Nov. 19, 2004

P.O. BOX 3469
Worcester, MA 01613

August 14, 2003

Ms. Migdalia Rivera
Supervisor
Commonwealth Of Massachusetts
Commission Against Discrimination
436 Dwight Street, Room 220
Springfield, MA 01103

RE:    **Anthony Campbell v. Isolations Technologies
and Larry D'amato, Operations Manager.
MCAD DOCKET NO: 02SEM02493**

Dear Ms. Rivera:

This is in acknowlegment of my Probable Cause findings letter of April 1, 2003 and Conciliation
Conference of April 23, 2003, with the General Commission Counsel, Ms. Patricia Quintalin.

Please find enclosed correspondence from the Respondent regarding the **POST-
DETERMINATION DISCOVERY ORDER. Although, the Ninety Days has expired.**

I can be reached at 508-757-5123, if further referral is needed to the person(s) responsible for the
litigation process.

Kind regards!

Sincerely yours,

Anthony Campbell

enclosures:

P.O. BOX 3469
Worcester, MA 01613

August 22, 2003

## CERTIFIED MAIL 7002 2030 0002 2542 5956

Ms. Migdalia Rivera
Supervisor
Commonwealth Of Massachusetts
Commission Against Discrimination
436 Dwight Street, Room 220
Springfield, MA 01103

**RE:**    **Anthony Campbell v. Isolations Technologies
and Larry D'amato, Operations Manager.
MCAD DOCKET NO: 02SEM02493**

Dear Ms. Rivera:

This is in acknowledgment of my Probable Cause findings letter of April 1, 2003 and Conciliation Conference of April 23, 2003, with the General Commission Counsel, Ms. Patricia Quintalin.

Please find enclosed correspondence from the Respondent regarding the POST-DETERMINATION DISCOVERY ORDER. Although, the Ninety Days has expired. Please advise if I should respond to the Respondent's Interrogatories. Also, please find answers to the Interrogatories.

I can be reached at 508-757-5123, if further referral is needed to the person(s) responsible for the litigation process.

Sincerely yours,

Anthony Campbell

enclosures:

