P.O. BOX 3469
Worcester, MA 01613

June 29, 2005

Mr. Martin Castles
Deputy Clerk
United States District Court
For The District Of Massachusetts
Harold D. Donohue Federal Building
595 Main Street
Worcester, MA 01608

**RE:** Anthony Campbell v. Isolations Technologies
C.A. NO: 04-40236 FDS.

Dear Mr. Castles:

Please be informed of the Defendant's Lawyer, Peter A. Harney, who has being acting as Mr. William Zall, and LOCAL RULE 83.6(4)(A)(B) to RULE 83.7.

Thank you.

Sincerely yours,

Anthony Campbell
Plaintiff

enclosures:

# UNITED STATES DISTRICT COURT
# FOR THE DISTRCIT OF MASSACHUSETTS

Anthony Campbell ................................................ Plaintiff )
                                                                          )
                                                                          )
   v.                                                                     ) C.A. NO: 04-40236 FDS.
                                                                          )
Isolations Technologies ................................................ Defendant )

## Regarding the Defendant's Lawyer, Peter A. Harney, who has being acting as Mr. William Zall, and LOCAL RULE 83.6(4)(A)(B) to RULE 83.7.

(A)   During the Investigative Conference of December 17, 2002, at the Commission's Office, 436 Dwight Street, Room 220, Springfield, MA 01103. He (Peter Harney) introduced himself to the Investigator, Ms. Maryann Brunton Of MCAD, as Peter Harney.          "EXHIBIT H".

(B)   During the conciliation Conference of April 23, 2003, at the Commission's Office, 436 Dwight Street, Room 220, Springfield, MA 01103, with the Commission General Counsel, Ms. Patricia Quintalin. He (Peter Harney) introduced himself as William Zall.          "EXHIBIT M".

(C)   During a meeting of September 23, 2005, with Jerry Levisk, at the Commission's Office, 436 Dwight Street, Room 220, Springfield, MA 01103. He (Peter Harney) introduced himself as William Zall.

(D)   During The Initial Scheduling Conference of March 25, 2005, at the United States courthouse herein Worcester, in accordance with the Fed R. CIV. P. 16(b) and LOCAL RULE 16.1. He (Peter Harney) introduced himself as William Zall to Hon. Saylor, Judge. "EXHIBIT P".

Respectfully submitted by,

*[signature]*

Anthony Campbell
Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Campbell,

      Plaintiff,

v.

Isolations Technologies, et al.,
      Defendant.

CIVIL ACTION
NO. 04-40236-FDS

## NOTICE OF SCHEDULING CONFERENCE

SAYLOR, J.

      An initial scheduling conference will be held in Courtroom No. __2__ on the 5th floor at __11:30a__.m. in the United States Courthouse in Worcester, Massachusetts, on __Friday  3/25/05__, in accordance with Fed. R. Civ. P. 16(b) and Local Rule 16.1. The court expects the senior lawyers ultimately responsible for the case to attend and further expects compliance with the terms of Local Rule 16.1.

1. **Agenda Not Required:** Notwithstanding the provisions of Local Rule 16.1(B)(1), counsel are not required to prepare an agenda of matters to be discussed at the scheduling conference unless otherwise specifically directed to do so by the court.

2. **Scheduling Order:** In most cases, the court will issue a scheduling order at the conference in the form attached hereto. The court may depart from the form in cases of relative complexity or simplicity or otherwise where justice may so require. The parties should attempt to agree on the relevant dates for discovery and motion practice. The dates of the status conference and pretrial conference will be set by the court.

3. **Discovery Event Limitations:** Counsel representing parties in relatively complex matters who expect to require relief from the limitations on discovery events set forth in Local Rule 26.2(c) should be prepared to address that issue at the scheduling conference.

By the Court,

__2/23/05__
Date

/s/ Martin Castles
Deputy Clerk



EXHIBIT "P"




# THE COMMONWEALTH OF MASSACHUSETTS
## COMMISSION AGAINST DISCRIMINATION
### 436 DWIGHT STREET, SUITE 220
### SPRINGFIELD, MA 01103

**Jane Swift**
Governor

**Kevin J. Sullivan**
Secretary

**Dorca I. Gómez**
Chairwoman

**Cynthia A. Tucker**
Commissioner

**Walter J. Sullivan, Jr.**
Commissioner

Date: April 1, 2003

Mr. Anthony Campbell
P.O. Box 3469
Worcester, MA 01613

Attorney William Zall
Cunningham, Machanic, et al.
220 North Main Street
Natick, MA 01760-1100

Re:   Anthony Campbell v. Isolations Technologies
      No: 022302493

Dear Parties/Counsel:

You are hereby notified that I have found probable cause to credit the allegations in the above-referenced complaint. A copy of the disposition is enclosed.

Under Massachusetts General Laws, Chapter 151B, Section 5, the policy of the Commission is to bring about compliance with the Commonwealth's anti-discrimination laws without resort to a public hearing. To this end both <u>parties</u> and <u>counsel</u> are required to attend a conciliation conference at the Commission's Springfield office on **April 23, 2003 at 10:00 a.m.** to explore voluntary resolution.

Resolution is difficult at best, and may be impossible without the presence of decision-makers. The Commission strongly disapproves of parties appearing exclusively through counsel, including in-house counsel. We strongly suggest that Complainant's counsel send a written proposal of settlement to Respondent's counsel 10 days prior to the scheduled session. Parties are urged to discuss settlement not less than five (5) days before the session. Be prepared to spend 1-2 hours at the session. **Respondents' failure to attend this meeting may result in immediate certification to public hearing. Complainant's failure to attend may result in dismissal of the case.**

No continuances will be granted except upon written request to the Enforcement Clerk with notice to the opposing party and upon a showing of good cause. If you have any questions, please contact Carol Murchison (413) 739-2145 ext. 129.

Cynthia A. Tucker,
Investigating Commissioner

enc.

EXHIBIT M

COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION
INVESTIGATION FACT SHEET

**To :**  Attorney William Zall
Cunningham, Machanic, et al.
220 North Main Street
Natick, MA 01760-1100

**From:** Commonwealth of Massachusetts
Commission Against Discrimination
436 Dwight Street, Room 220
Springfield, MA 01103

| | | | |
|---|---|---|---|
| **Docket No.** | **EEOC No.** | **Investigator** | **Telephone No.** |
| 022302493 | 16CA202743 | Maryann K. Brunton | (413) 739-2145 |

**Case Name:**
Anthony Campbell v. Isolations Technologies

### Investigation Summary

On July 23, 2002, Complainant filed a complaint with this Commission charging that the Respondent, Isolations Technologies, subjected him to unlawful discrimination by failing to hire him because of his race and color (Black). Complainant alleges that the Respondent's actions constitute unlawful employment discrimination in violation of M.G.L. Chapter 151B, §4(1) and Title VII of the 1964 Civil Rights Act, as amended. Complainant further alleges that Respondent, Mr. Larry D'Amato, interfered with the exercise and enjoyment of Complainant's civil rights granted and protected by law under M.G.L. Chapter 151B, §4(4A).

Respondent denies all allegations of unlawful discrimination and states that Respondent attempted to hire Complainant on several occasions, but Complainant declined employment with the Respondent because he wanted a higher salary.

### Issue(s) Investigated:

The substantive issue in dispute in this charge concerns Complainant's allegations that the Respondent discriminated against him by failing to hire him because of his race and color (Black).

### Investigation Reveals:

Respondent, Isolations Technologies, Inc., employs more than twenty-five (25) employees, and is an employer as defined in M.G.L. Chapter 151B, §1, Paragraph 5.

On September 29, 2001, Complainant, by and through Excel Staffing, a temporary employment agency, was hired for part-time employment with Respondent, Isolations Technologies, as a Machine Operator. It is undisputed that Complainant's work performance was satisfactory during his tenure with the Respondent.

Complainant alleges racial discrimination that ultimately resulted in his layoff.

1

Complainant asserts that on March 29, 2002, he was approached by Respondent's Operations Manager, Mr. Larry D'Amato, and asked whether it was true that he was interested in full time employment with Respondent, Isolations Technologies. Complainant replied that he was definitely interested in full time employment. In response, Mr. D'Amato, stated, "That will not happen. A Black person will never work full-time for Isolations Technologies. You were brought here just as a cover, but will never be hired by Isolations Technologies. Stay with Excel." Several minutes later, Mr. D'Amato returned and stated to the Complainant, "I am the power who hires and fires, there will be no Blacks ever to be hired by Isolations Technologies in the past, present, or future." Complainant then asked Mr. D'Amato if that was the reason why there were no Blacks working at Isolations. Mr. D'Amato replied, "Yes." Complainant further asked if the owner, Mr. Michael Rigolli, supported his view. Mr. D'Amato stated that the owner did not have the power to hire and fire and that he did because he was Italian.

As a result of the conversations with Mr. D'Amato, Complainant attempted to speak with the owner but was told that he was out of the office for three days. On April 2, 2002, Complainant was informed by and through the temporary agency that Mr. D'Amato stated that Complainant's services were no longer needed at Isolation Technologies. Complainant contends that his layoff was motivated by discriminatory animus.

In further support of his allegation of racial discrimination, Complainant contends that there were no Black employees who worked for the Respondent. In support of this contention, Complainant states that the Respondent was hiring less qualified Caucasian workers.

Respondent denies all allegations of unlawful discrimination and states that Complainant was offered a permanent position with the Respondent on several different occasions, but Complainant refused the employment offers because he was demanding a higher salary. Respondent further denies that Mr. D'Amato ever made any discriminatory statements. In support of this contention, Respondent submitted an affidavit from the President of the temporary employment agency whereby the witness attested that Complainant told him "that he was not going to accept Isolation's job offer at that time because he needed to have more money than they were offering." Complainant disputes this assertion and states that he was never offered any position with the Respondent on a permanent basis. Thus, genuine issues of material fact exist with respect to whether Complainant was offered a permanent position with the Respondent. These issues are more appropriately reserved for determination at a public hearing.

In contravention of Respondent's contention however, Complainant argues that Respondent's articulated reasons for not hiring him are pretextual. In support of this argument, Complainant states that after his employment ended with the Respondent, he was making less money per hour than if he had accepted the position with the Respondent. Respondent admits offering Complainant an hourly rate of seventeen dollars per hour. Complainant argues that if he was offered the job at seventeen dollars per hour, he would not have refused a job offer that paid him more money than the temporary jobs he performed prior to, and subsequent to, his employment with Respondent.

2

Lastly, as part of its investigation, the Commission requested statistical documentation of Respondent's employee racial makeup. It in uncontroverted that at the time of Complainant's termination, Respondent has not employed any Black individuals since its inception. The statistical evidence pertaining to the color composition of the work force at Isolation Technologies, coupled with the alleged statements of Mr. D'Amato may support an inference of race/color discrimination. Thus, genuine issues of material fact exist with respect to whether Complainant was not offered a permanent position with the Respondent because of his race/color (Black). These issues are more appropriately reserved for determination at a public hearing.

## CONCLUSION:

Based on the foregoing findings, a finder of fact could form the reasonable belief that the Respondent discriminated against Complainant by subjecting him to discrimination based upon his race and color (Black). Credibility issues exist which are better determined by a hearing officer who may observe witnesses firsthand. Further, genuine issues of material fact exist which are better reserved for determination at a public hearing, including whether Respondent's proffered reasons for not hiring the Complainant were pretextual. Therefore, a finding of probable cause is warranted.

## DISPOSITION:

Therefore, pursuant to Section 5 of Chapter 151B of the Massachusetts General Laws, and in conformity with the foregoing Findings of Facts, I have this day found that probable cause exists for crediting the allegations of the subject complaint. Pursuant to said Section 5, the parties will be afforded an opportunity to participate in a conciliation conference at the offices of the Commission. If the parties do not choose to participate, or if such conference does not result in an informal resolution of this matter, the case will be certified for public hearing and the designated Hearing Officer will render a final disposition on this matter.

Date:

_____  _____  _____
Maryann K. Brunton              Migdalia Rivera                 Cynthia A. Tucker
Compliance Officer              Supervisor                      Investigating Commissioner

cc:   Mr. Anthony Campbell
      P.O. Box 3469
      Worcester, MA 01613

3

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
436 Dwight Street, Rm. 220 , Springfield, MA 01103
Phone: (413) 739-2145 Fax:

8/7/2002

Anthony Campbell
P.O. Box 3469
Worcester, MA 01613

RE: Anthony Campbell vs. Isolations Technologies
MCAD Docket Number: 02SEM02493
EEOC/HUD Number: 16CA202743

Dear Complainant Party:

Please be advised that the Massachusetts Commission Against Discrimination (MCAD) has assigned Maryann Brunton to investigate the above referenced complaint of discrimination. The Commission's investigator will review the allegations in the complaint and will keep the parties informed of developments arising from that investigation.

In order to reduce the time necessary to investigate and resolve complaints of discrimination, the MCAD schedules an Investigative Conference with the parties shortly after the complaint is filed. Information about the Conference is included with this notice.

An Investigative Conference regarding the above complaint will be held at the Commission's Office, 436 Dwight Street, Rm. 220 , Springfield, MA at 09:00 AM on 12/17/02. You are required to attend this conference and your failure to do so will be taken as representing a lack of interest on your part in pursuing this claim.

One important purpose of this conference will be to determine whether the parties are willing to consider a rapid, informal and voluntary resolution of this dispute. The Commission encourages such resolution as an alternative to the often lengthy and expensive litigation process.

If you have any questions pertaining to the Investigation, please contact Maryann Brunton at (413) 739-2145 x 113.

Very truly yours,

Maryann Brunton
Investigator

Cc:

EXHIBIT "H"

MCAD Docket Number 02SEM02493, Serve Complainant – With Investigative Conference

## U.S. Equal Employment Opportunity Commission

Boston Area Office
JFK Federal Building, Room 475
Boston, MA 02203
Phone: (617) 565-3200
TDD: (617) 565-3204
Fax: (617) 565-3196

EEOC Charge No: 16CA202743

NOTICE
This office has been sent a copy of the Complaint of employment discrimination you filed with the Massachusetts Commission Against Discrimination (MCAD), and in order to preserve your federal rights the above referenced charge number has been assigned.

YOUR FEDERAL RIGHTS AND EEOC PROCEDURAL REGULATIONS
   (✓) Title VII of the Civil Rights Act of 1964, as amended (Title VII)-
   If you wish to file a private lawsuit in Federal District Court with your own private attorney, prior to the MCAD's completion of its investigation, you may do so by requesting a NOTICE OF RIGHT TO SUE from the EEOC. Once this request for you to file a private lawsuit is granted, your EEOC charge and possibly the MCAD complaint will be closed. When you receive the NOTICE OF RIGHT TO SUE, it is only valid for ninety (90) days.

   ( ) The age discrimination in employment act of 1967, as amended (ADEA)-
   If you filed your complaint within 300 days of the alleged act of discrimination you can file a private lawsuit under the ADEA any time 60 days after the date you filed your complaint, or within 90 days of your receipt of notice that the EEOC has completed action on your complaint.

   ( ) The Americans with Disabilities Act of 1990 - Same as Title VII.

The Massachusetts Commission Against Discrimination will investigate and resolve your complaint. If you have any questions regarding the status of your complaint, contact the MCAD location where you filed the complaint. If you want EEOC to conduct a review of the MCAD's Final Determination and Order, you must make this request in writing to the above address within 15 days of the MCAD's final determination, otherwise, we will accept the MCAD's final action as our own. EEOC's regulations require that you inform us and the state agency, in writing, of any change in or prolonged absence from your current address.

If you do not wish to file a private lawsuit on your own, and wish the Massachusetts Commission Against Discrimination to continue with its investigation of your complaint, there is no need for you to take any action now. The MCAD will in the near future inform you of their findings.

EEOC Charge Number 16CA202743, EEOC Transmittal Letter to Complainant

DISCRIMINATION COMPLAINT
MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION AND EEOC

FEPA NO.: 02BEM02493  FILING DATE: 7/23/02
EEOC NO.: 16CA202743  VIOLATION DATE: 4/2/02

**NAME OF AGGRIEVED PERSON OR ORGANIZATION:**
Anthony Campbell   TELEPHONE NUMBER (508) 757-5123
P.O. Box 3469
Worcester, MA 01613

**NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY OR STATE/LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**
Isolations Technologies   TELEPHONE NUMBER (508)-478-0111
4 Business Way            NO. OF EMPLOYEES: 25+
Hopedale, MA 01747

Larry D'amato, Operations Manager

CAUSE OF DISCRIMINATION BASED ON: Race/Color (Black)

THE PARTICULARS ARE:

On April 2, 2002, Isolations Technologies discriminated against me by failing to consider me for hire based on my race/color (Black), in violation of M.G.L. c.151B s4(1) and Title VII of the 1964 Civil Rights Act.
Larry D'amato, Operations Manager, also interfered with the exercise and enjoyment of my civil rights granted and protected by failing to consider me for hire based on my race/color (Black), in violation of M.G.L. c. 151B s4 (4A).

1. In September of 2001, I gained part-time employment as a machine programmer with Isolations Technologies through Excel Staffing, a temp agency.
2. On March 29, 2002, Larry D'amato, approached me while I was working and asked if it was true that I was interested in working full-time and/or being hired directly through Isolations Technologies. I replied that I was definitely interested.
3. Mr. D'amato responded, "That will not happen. A black person will never work full-time for Isolations Technologies. You were brought here just as a cover but will never be hired by Isolations Technologies. Stay with Excel."
4. A few moments later, Mr. D'amato approached me again and said, "I am the power who hires and fires, there will be no blacks ever to be hired by Isolations Technologies in the past, present, or future". I asked him if that's why there was not a single black employee at Isolations, and he said yes. I asked him if the owner, Michael Rigolli, supported his view. Mr D'amato stated that Michael

   didn't have the power to hire and fire. He then stated that because he (Mr. D'amato) was Italian, he was the one with the power.
5. After our conversation, I spoke with Steve (LNU) in Quality Control. Steve informed me that Michael Rigolli would be out of the office for the next three days.
6. On April 2, 2002, I received a call from Paul, an employee at Excell Staffing, who informed me that I was no longer needed at Isolations Technologies according to Larry D'amato.
7. While I had been working at Isolations, I saw many white individuals with little or no experience get hired. I believe I was more qualified for many positions into which these white individuals were hired.

I believe Isolations Technologies' failure to consider me for hire constitutes unlawful discrimination because of my race/color.


I ALSO WANT THIS CHARGE FILED WITH EEOC: ✓
I WILL ADVISE THE AGENCIES IF I CHANGE MY ADDRESS OR TELEPHONE NUMBER AND I WILL COOPERATE FULLY WITH THEM IN THE PROCESSING OF MY CHARGE IN ACCORDANCE WITH THEIR PROCEDURES.
I SWEAR OR AFFIRM THAT I HAVE READ THIS COMPLAINT AND THAT IT IS TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

_____
Anthony Campbell


SWORN TO AND SUBSCRIBED BEFORE ME THIS 19th DAY OF July, 2002

JUL 23 2002

NOTARY PUBLIC

_Mary Ansara_

My Commission Expires:  /  /

**MARY ANSARA**
**Notary Public**
My Commission Expires Nov. 19, 2004

# Massachusetts Commission Against Discrimination
## Facts About The Initial Investigative Conference

**1. What is it?**

The initial investigative conference is a brief meeting with the complainant and the respondent held by the MCAD investigating compliance officer assigned to investigate the complaint of discrimination. The conference is held at the MCAD office and can last anywhere from a few minutes to one-half hour. During the conference, the complainant and respondent may bring an attorney and may make a brief statement concerning their positions. The investigating compliance officer will usually preside over the conference and may be assisted by other MCAD staff. The compliance officer my ask questions of each party.

The purpose of the conference is to allow the investigating compliance officer to better plan the course of the investigation. Complainants and respondents will be asked to identify persons whom they believe the investigator should speak to and identify documents that they believe will be helpful to the investigation.

The investigating compliance officer may, during the course of the conference, suggest that that the parties meet to discuss a possible settlement. Therefore, it may be helpful for complainants and respondents to think ahead of time about what they would be willing to do to voluntarily resolve the complaint.

**2. Should I bring witnesses and documents?**

   **a. Witnesses—bring a witness list**

It is not necessary to assemble all of your witnesses and documents for this conference. If you do have witnesses you believe the Commission needs to interview, it would be helpful if you prepared and brought to the conference a list showing each name, the daytime phone number and a summary of what the witness knows about the dispute. If you have affidavits or written statements from witnesses, bring those documents to the conference.

   **b. Documents—bring a copy of important documents**

If you have important documents you would like the compliance officer to see, please make a copy and bring it to the conference. If documents are not available to you, please bring a list of those documents and information about where they are located.

**3. Will this be my only chance to provide information to the commission?**

For most cases, the conference represents the start of the commission's investigation. However, there are some cases that require little or no additional investigation beyond the initial conference.

You should be prepared to present your position in detail and to answer questions that may be asked by the compliance officer. Respondents' position statements must be affirmed and submitted to the commission within twenty-one days after the receipt of the complaint.

**4. What procedures are used at the conference?**

The initial investigative conference is informal. No sworn testimony is taken and no transcript is made. The parties are not allowed to cross-examine each other, and while attorneys may participate, the proceeding is not adversarial. Rules of evidence do not apply. Attorneys should be prepared to present oral argument on the merits of the case. Key witnesses may be brought to the conference, however, the investigating compliance officer is usually more interested in hearing from the parties and from counsel.

**5. What happens after the conference?**

The compliance officer will review the information received at the conference and, in some cases, will make further inquiries to the parties and their witnesses, either in writing or by telephone. When the investigator has completed the investigation, she or he will make a recommendation to the investigating commissioner. This recommendation may consist of the following: probable cause disposition, lack of probable cause disposition, or a finding of the results of the investigation and of further legal rights by mail.

**6. Are postponements allowed?**

Given the many thousands of complaints received each year by the commission, postponements of initial investigative conferences, for reasons other than an emergency, are not allowed.

**7. What happens if I do not attend the conference?**

The failure of a party to attend the conference after due notice may result in dismissal of the charge pursuant to 804 CMR 1.15(5), in the case of a complainant, or default pursuant to 804 CMR 1.16, in the case of a respondent. A party who appears at the conference exclusively through an attorney or other representative unfamiliar with the events at issue shall be deemed to have failed to attend. The Commission may Order any party failing to attend, or requesting more than one continuance, to pay the Commission for costs incurred by such failure or request. Failure to abide by such order may result in sanctions as provided for in 804 CMR 1.16, or administrative dismissal pursuant to 804 CMR 1.15(5) for failure to cooperate with the Commission.